## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 27 2017, 9:36 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Barbara J. Simmons
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Justin F. Roebel
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Isiah Williams,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

February 27, 2017

Court of Appeals Case No.
49A02-1606-CR-1204

Appeal from the Marion Superior Court

The Honorable Shannon L. Logsdon, Judge

Trial Court Cause No.
49G21-1507-CM-25444

**Najam, Judge.**

# Statement of the Case

Isiah Williams appeals his conviction, following a bench trial, for carrying a handgun without a license, as a Class A misdemeanor. Williams raises one issue for our review, namely, whether the State presented sufficient evidence to support his conviction. We affirm.

# Facts and Procedural History

On the afternoon of July 14, 2015, Indianapolis Metropolitan Police Department ("IMPD") Officer Jacqueline Stackman surveilled Bryisha Dickerson's apartment and Dickerson's vehicle in order to execute a warrant that authorized a buccal swab of Dickerson's boyfriend, Williams. After Officer Stackman arrived she requested backup. Approximately thirty-five minutes later, IMPD Officers Steve Scott, Erik Forestal, and Brian Allen arrived at the scene. Officer Stackman then saw Williams and Dickerson exit Dickerson's apartment. Williams was using crutches. Dickerson assisted Williams into the driver's seat of her vehicle.

As Williams was entering the vehicle, Officer Scott pulled his vehicle in front of it and activated the emergency lights. Officer Scott stated to Williams, "Police, show me your hands." Tr. at 12. At the time, Williams was leaning across the driver's seat and middle console and down into the passenger-side floorboard. *Id*. at 13, 26, 34. According to Officer Scott, Williams appeared to be "either reaching for something or putting something away." *Id*. at 34. Williams complied with the officer's order to show his hands, and the officers secured

him. Officers Stackman and Scott then observed a handgun visible on the passenger side floorboard.

[4] During a pat down for weapons, Officer Scott asked Williams, "Do you have any weapons on you?" *Id.* at 38. Williams pointed to the handgun on the floorboard and stated, "Yes, I have one right there." *Id.* at 38, 43. One of the IMPD officers arrested and searched Williams and found marijuana in his pants pocket. A crime scene specialist later recovered the handgun but found no fingerprints on the weapon.

[5] The State charged Williams with carrying a handgun without a license, as a Class A misdemeanor, and possession of marijuana, as a Class B misdemeanor.[1] At the bench trial, Dickerson testified that the handgun was hers, that she had received it that day as a gift from her friend Roy Cole, and that Cole had left the gun in Dickerson's vehicle. According to Dickerson, Cole placed the gun in the car "a pretty good time" prior to when the police arrived, but she acknowledged that she had previously claimed under oath that Cole placed the gun in the car "a couple of minutes" before police arrived. *Id.* at 64, 69. The officers also testified and informed the court that Williams had identified the firearm as his at the scene. The court found Williams guilty as charged. In support of its judgment, the court stated that it did not find

---

[1] Williams does not appeal his conviction for possession of marijuana.

Dickerson to be a credible witness.  The court sentenced Williams accordingly, and this appeal ensued.

## Discussion and Decision

Williams contends that the State failed to provide sufficient evidence to support his conviction for carrying a handgun without a license.  In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor assess the credibility of the witnesses.  *See, e.g.*, *Jackson v. State*, 925 N.E.2d 369, 375 (Ind. 2010).  We consider only the probative evidence and reasonable inferences therefrom that support the conviction, *Gorman v. State*, 968 N.E.2d 845, 847 (Ind. Ct. App. 2012), *trans. denied*, and we "consider conflicting evidence most favorably to the trial court's ruling," *Wright v. State*, 828 N.E.2d 346, 352 (Ind. 2005).  We affirm if the probative evidence and reasonable inferences drawn from that evidence "could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt." *Jackson*, 925 N.E.2d at 375.

To prove Williams carried a handgun without a license, the State was required to prove beyond a reasonable doubt that Williams carried a handgun "in any vehicle or on or about [his] body without being licensed . . . to carry a handgun."  Ind. Code § 35-47-2-1(a) (2015).  "To satisfy these elements, the State must prove the defendant had either actual or constructive possession of the handgun." *Deshazier v. State*, 877 N.E.2d 200, 204 (Ind. Ct. App. 2007), *trans. denied*.  "A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item; and (2)

the intent to maintain dominion and control over it." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011).

[8] Both capability to control and intent to control may be inferred from the defendant's possessory interest in the location where the firearm is found, even when that possessory interest is not exclusive. *Id*. However, when the possessory interest is not exclusive,

> the State must support th[e] inference [of intent to control the item] with additional circumstances pointing to the defendant's knowledge of the presence and the nature of the item. We have previously identified some possible examples, including (1) a defendant's incriminating statements; (2) a defendant's attempting to leave or making furtive gestures; (3) the location of contraband like drugs in settings suggesting manufacturing; (4) the item's proximity to the defendant; (5) the location of contraband within the defendant's plain view; and (6) the mingling of contraband with other items the defendant owns.

*Id*. at 174-75 (internal citations omitted). This list, however, is not exhaustive. *Johnson v. State*, 59 N.E.3d 1071, 1074 (Ind. Ct. App. 2016). The ultimate inquiry is whether a reasonable fact-finder could conclude from the evidence that the defendant knew of the nature and presence of the contraband. *Id*. (citing *Gray*, 957 N.E.2d at 174-75).

[9] Here, Williams did not have exclusive control over the vehicle in which the handgun was located. However, the handgun was in plain view on the floorboard of a vehicle solely occupied by Williams. Williams reached toward the area where the gun was found as officers arrived. When asked if he had

weapons, Williams admitted, "Yes, I have one right there" and pointed to the firearm, which demonstrated that he had knowledge of the presence and nature of the handgun in the car. Tr. at 38, 43. And, while Williams did not own the car, he was entering the driver's seat and had the key to the vehicle. That was sufficient evidence to support the trial court's conclusion that Williams constructively possessed the firearm. *See, e.g.*, *Grim v. State*, 797 N.E.2d 825, 831 (Ind. Ct. App. 2003) (holding that the defendant's "close proximity to the handguns, in addition to the fact that one of the handguns was plainly visible when the passenger door was open and that there were bullets and ammunition in plain view, [was] sufficient circumstantial evidence" to support the conviction of carrying a handgun without a license).

[10] However, Williams contends that the evidence was insufficient because Dickerson testified that someone else placed the handgun in the car and it is possible that Williams may not have been reaching toward the gun but rather "attempting to position his [injured] body" into the car. Appellant's Br. at 13. This contention is simply a request that we reweigh the evidence and reevaluate the credibility of Dickerson, which we will not do. *See*, *Jackson*, 925 N.E.2d at 375. We affirm Williams' conviction.

[11] Affirmed.

Bailey, J., and May, J., concur.