## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 25 2019, 6:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Darren Bedwell
Marion County Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Michael Ray Gross,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 25, 2019

Court of Appeals Case No.
18A-CR-2303

Appeal from the Marion Superior Court

The Honorable James Snyder, Master Commissioner

Trial Court Cause No.
49G20-1709-F4-33595

**Robb, Judge.**

# Case Summary and Issue

[1] Following a traffic stop, Michael Gross was arrested after officers searched the stolen vehicle he was driving and observed a firearm, methamphetamine, and drug paraphernalia. Gross was ultimately convicted of unlawful possession of a firearm by a serious violent felon, possession of methamphetamine, and possession of paraphernalia. Gross presents one issue for our review, namely whether the evidence is sufficient to support his conviction of unlawful possession of a firearm by a serious violent felon. Concluding the State presented sufficient evidence to support his conviction, we affirm.

# Facts and Procedural History

[2] The facts most favorable to the verdict are as follows. On August 28, 2017, Elizabeth Calkins reported that her truck had been stolen from the parking lot of her apartment complex. Calkins informed friends and relatives through Facebook that her truck had been stolen and asked to be notified if anyone saw it. On September 5, 2017, Zachary Sponsel, the nephew of Calkins' co-worker, recognized the truck. He began following the truck and, he contacted the police. Officers Douglas Lepsky and Matthew Coffing of the Indianapolis Metropolitan Police Department responded to the call and located the vehicle near the 1600 N. block of Ritter Avenue in Indianapolis. The officers ran the truck's vehicle identification number and confirmed the truck was stolen. Officer Lepsky activated his lights and sirens. After sixty seconds, the driver of the truck, later identified as Gross, pulled over. Officer Lepsky approached the

truck, escorted Gross out of the vehicle, explained to Gross why he was stopped, and read Gross his Miranda rights.

[3] Gross agreed to talk with the officers. When asked where he got the truck, Gross replied that "some girl sold it to [him] on [O]ffer [U]p." Appellant's Appendix, Volume II at 17; *see also* Transcript, Volume 2 at 14. According to Gross, he entered into an agreement with S.K. to exchange his motorcycle for her truck. Gross first told Officer Lepsky he purchased the truck about five days prior, then said he purchased it about three days ago. *See id*. Officer Lepsky ran Gross' information and was informed there was an open warrant for Gross' arrest. Unable to locate the owner of the truck, the officers began an inventory search of the vehicle before impounding it. Officer Lepsky went to the passenger side while Officer Coffing went to the driver's side. During the search, officers observed a firearm in the center console, an open pack of cigarettes with suspected methamphetamine on the passenger seat, and two glass pipes next to the cigarettes. Testing later revealed 7.63 grams of methamphetamine. *See* Exhibits at 14; Tr., Vol. 2 at 39.

[4] Officer Lepsky arrested Gross. The officers were ultimately able to contact Calkins, and she arrived on scene. After officers confirmed that none of the items in the truck belonged to Calkins, they released the truck to her. *See* Tr., Vol. 2 at 32. On September 18, 2017, the State charged Gross with the following: Count I, unlawful possession of a firearm by a serious violent felon, a Level 4 felony; Count II, possession of methamphetamine, a Level 4 felony; Count III, auto theft, a Level 6 felony; and Count IV, possession of

paraphernalia, a Class C misdemeanor. Gross waived his right to a jury trial, and a bench trial was held on August 14, 2018. *See* Appellant's App., Vol. II at 50. Gross was convicted of Counts I, II, and IV.[1] With respect to Counts I and II, Gross was sentenced to eight years, with four years executed in the Indiana Department of Correction, one year in a Marion County Community Corrections program, and three years suspended with two years suspended to probation. The trial court sentenced Gross to sixty days executed in the Department of Correction for Count IV. *See* Tr., Vol. 2 at 118-19; Appealed Order at 1-2. All sentences were ordered to be served concurrently. Gross now appeals.

# Discussion and Decision

## I. Sufficiency of the Evidence

### A. Standard of Review

[5] When reviewing the sufficiency of the evidence to support a conviction, we do not reweigh the evidence or judge the credibility of the witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). We consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). When confronted with conflicting evidence, we must consider it "most favorably to the trial court's ruling" and the evidence

---

[1] Count III, auto theft, was involuntarily dismissed pursuant to Indiana Trial Rule 41(B) during the bench trial. *See* Tr., Vol. II at 69-70.

need not "overcome every reasonable hypothesis of innocence." *Id*. "We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt." *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009).

## B. Unlawful Possession of Firearm

[6] Gross only challenges his conviction of unlawful possession of a firearm by a serious violent felon. Specifically, he argues there is insufficient evidence that he constructively possessed the firearm.

[7] In order to convict Gross, the State had to prove beyond a reasonable doubt that Gross was a serious violent felon who knowingly or intentionally possessed a firearm. Ind. Code § 35-47-4-5(c).[2] A conviction for possession of a firearm may rest upon proof of either actual or constructive possession. *Smith v. State*, 113 N.E.3d 1266, 1269 (Ind. Ct. App. 2018), *trans. denied*. A person who has direct and physical control over a firearm has actual possession, whereas a person who has the intent and capability to maintain control over a firearm has constructive possession. *Tate v. State*, 835 N.E.2d 499, 511 (Ind. Ct. App. 2005), *trans. denied*. Here, there is no evidence that either officer observed the

---

[2] Gross' prior conviction of dealing in methamphetamine, a Level 5 felony, renders him a "serious violent felon." *See* Ind. Code § 35-47-4-5(b)(25); *see also* Appellant's App., Vol. II at 21, 23. He does not challenge his status as a serious violent felon.

firearm in Gross' physical possession. Therefore, the State must establish constructive possession.

[8] "A person constructively possesses contraband when the person has (1) the capability to maintain dominion and control over the item; and (2) the intent to maintain dominion and control over it." *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). To prove capability, the State must show the defendant is able to reduce the contraband to his or her personal possession. *Smith*, 113 N.E.3d at 1270. A trier of fact may infer that a defendant had the capability to maintain dominion and control over contraband from the simple fact that the defendant had a possessory interest in the premises on which an officer found the item. *Gray*, 957 N.E.2d at 174. "In essence the law infers that the party in possession of the premises is capable of exercising dominion and control over all items on the premises. . . . And this is so whether possession of the premises is exclusive or not." *Gee v. State*, 810 N.E.2d 338, 340-41 (Ind. 2004). Because Gross was the sole occupant of the truck in which the firearm was found and stated that he had purchased the truck days before, the trier of fact could reasonably infer Gross had the capability to maintain dominion and control over the firearm. *See Whitney v. State*, 726 N.E.2d 823, 827 (Ind. Ct. App. 2000) (holding that defendant's sole possession of the car in which contraband was found was sufficient to show his ability to control the contraband).

[9] To prove intent, the State must demonstrate that the defendant had knowledge of the presence of the contraband. *Id*. at 826. This knowledge may be inferred from either the exclusive dominion and control over the premises that contain

the contraband or, if control is non-exclusive, evidence of additional circumstances that point to the defendant's knowledge of the presence of the contraband. *K.F. v. State*, 961 N.E.2d 501, 510 (Ind. Ct. App. 2012), *trans. denied*. These include: (1) incriminating statements made by the defendant; (2) attempted flight or furtive gestures; (3) proximity of contraband to the defendant; (4) location of the contraband within the defendant's plain view; or (5) mingling of the contraband with other items owned by the defendant. *Bradshaw v. State*, 818 N.E.2d 59, 63 (Ind. Ct. App. 2004). In addition, this court recognizes that the nature of the place in which the contraband is found can be an additional circumstance demonstrating a defendant's knowledge of the contraband. *Johnson v. State*, 59 N.E.3d 1071, 1073 (Ind. Ct. App. 2016). These circumstances are nonexhaustive and ultimately, our question is whether a reasonable fact-finder could conclude from the evidence that the defendant knew of the nature and presence of the contraband. *Id*. at 1074.

[10] In this case, the State argues that Gross had exclusive possession of the truck when he was pulled over because he was the sole occupant, but Gross contends "[t]here is not undisputed evidence here that [he] had 'exclusive dominion' over the truck for more than the hour to which he testified."[3] Brief of Appellant at 11. However, the evidence presented at trial established that after officers activated their lights and sirens, sixty seconds passed before Gross stopped the

---

[3] At trial, Gross disputed this. He testified that he told Officer Lepsky that he "*made* the deal three days ago" not that he had been in possession of the truck for three days. Tr., Vol. 2 at 77 (emphasis added). Gross testified he only had the truck for about an hour.

truck; Gross was the sole occupant of the truck at the time of the arrest; he told officers he had purchased the truck three or five days prior from a woman on "Offer Up," Tr., Vol. 2 at 14; he stated that he did not know if anyone else had been in the vehicle since he had purchased it; the handgun was located in the center console in close proximity to where Gross sat as he was driving the truck; and the officers testified at trial that photographs entered into evidence that showed the handgun in plain view, in the center console, with the console open reflected how the handgun looked at the time it was located.[4]

---

[4]Although the parties dispute whether the compartment where the firearm was discovered was open or closed, we are obligated to view the facts most favorably to the verdict and cannot reweigh the evidence. *See Drane*, 867 N.E.2d at 146. Exhibit 3, a photo depicting the truck's center console with the firearm, was admitted at trial and reveals that the center console was open and the firearm was in plain view. Officer Lepsky, who began searching the passenger side of the truck, testified that evidence remained in place until the evidence tech arrived and was able to take photos. He testified that procedure was consistent with the entire search. Officer Coffing also testified that Exhibit 3 accurately illustrated "how the firearm looked when it was located[.]" Tr., Vol. 2 at 47. Below is Exhibit 3:



Therefore, there is sufficient evidence from which the fact-finder could infer Gross had exclusive possession of the truck in which the firearm was found. *See Goliday v. State*, 708 N.E.2d 4, 6 (Ind. 1999) (holding that a defendant had exclusive possession of the vehicle when the defendant was the only person in the car at the time he was stopped); *cf. Holmes v. State*, 785 N.E.2d 658, 661 (Ind. Ct. App. 2003) (holding a defendant did not have exclusive control over a vehicle when he was merely a passenger).

# Conclusion

Under the circumstances of this case, we conclude the trial court, as trier of fact, could reasonably infer that Gross had the capability and intent to maintain dominion and control over the firearm and that he constructively possessed the firearm. Sufficient evidence was presented to support Gross' conviction for unlawful possession of a firearm by a serious violent felon. Accordingly, we affirm.

Affirmed.

Baker, J., and Najam, J., concur.